The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CROWDSTREET, INC., a Delaware
corporation,

Plaintiff,

v.

BDR CAPITAL, LLC, a Washington limited
liability company, fna BDR CAPITAL
PARTNERS, LLC

Defendant.

NO. 2:22-cv-01820-MJP

**DECLARATION OF TYLER LEVY**

I, Tyler Levy, hereby declare as follows:

1.      I am over the age of 18 and competent to testify about the matters set forth herein. I make this declaration based upon personal knowledge.

2.      I am currently employed by Plaintiff Crowdstreet, Inc. ("Crowdstreet"). I am the Associate General Counsel.

3.      Plaintiff CrowdStreet, Inc., is a Delaware corporation with its principal place of business in Austin, Texas.  Plaintiff is a citizen of Delaware and Texas.

4.      Defendant BDR Capital, LLC, fka BDR CAPITAL PARTNERS, LLC ("BDR"),

DECLARATION OF TYLER LEVY
(CASE NO. 2:22-CV-01820-MJP) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

142910494.1

is a Washington Limited Liability Company with its principal place of business at 11100 Main Street, Suite 201, Bellevue, Washington 98004.

5.     CrowdStreet is an online commercial real estate investing platform that facilitates and enables access to a real estate investor technology platform that functions as a marketplace of commercial and multifamily real estate deals.

6.     CrowdStreet provides various services to its customers, including services that enable them to post summaries and details of private offerings to be securely accessed by a customer's existing or prospective investors directly from the customer's website.

7.     On or around October 27, 2017, Defendant BDR, though its founder and chairman, Todd R. Bennett, entered into a Sponsor Direct Proposal ("Proposal") with CrowdStreet.  Attached as **Exhibit A** is a true and correct copy of the Proposal.

8.     The Proposal outlined the terms and conditions of CrowdStreet providing professional services to Defendant BDR in conjunction with a Sponsor Direct License Agreement ("Agreement"), which is incorporated into the Proposal via paragraph 6.  Attached as **Exhibit B** is a true and correct copy of the Agreement.

9.     Under the Proposal and the Agreement, Defendant BDR agreed to pay CrowdStreet certain fees for its professional services and products (namely, white-labeled investor management software), including, but not limited to, a one-time implementation fee as well as an annual subscription fee.  The Agreement explicitly provides that Defendant BDR's payment obligations are non-cancellable and the fees are non-refundable.

10.     Paragraph 17 of the Agreement requires an award of attorney fees and costs to the prevailing party in this litigation.

11.     On or around December 13, 2019, Defendant BDR by and through its Manager, Todd R. Bennett, entered into a Marketplace Services Agreement (the "MSA") with CrowdStreet.  Attached as **Exhibit C** is a true and correct copy of the MSA.

DECLARATION OF TYLER LEVY
(CASE NO. 2:22-CV-01820-MJP) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

142910494.1

12.     The MSA outlined the terms and conditions for Defendant's BDR's use of CrowdStreet's commercial real estate investor technology platform ("Marketplace").

13.     By executing the MSA, Defendant BDR agreed to abide by the terms of the MSA and further agreed to pay CrowdStreet certain fees for the use of the Marketplace and the services purchased on or through its CrowdStreet account.

14.     On or around December 13, 2019, Defendant BDR further entered into a CrowdStreet Marketplace Proposal ("MSA Proposal").  Attached as **Exhibit D** is a true and correct copy of the MSA Proposal.

15.     By executing the MSA Proposal and the MSA, Defendant BDR agreed to pay certain fees for its professional services and products, including, but not limited to, a nonrefundable on-boarding fee, a one-time solution deployment fee, as well as an annual solution fee.

16.     Paragraph 11 of the MSA requires BDR to pay the attorney fees and costs that CrowdStreet incurs enforcing the MSA.

17.     CrowdStreet has fully performed its obligations under, has fully complied with, and has fulfilled all conditions precedent pursuant to, the terms and conditions of the Proposal, the Agreement, the MSA, and the MSA Proposal.

18.     Defendant BDR used CrowdStreet's professional services and products, including, but not limited to the Marketplace, to raise money in conjunction with various real estate investment offerings it advertised, promoted, solicited and funded using the Marketplace and other CrowdStreet's professional services and products.

19.     Defendant BDR has raised over $3.12 million dollars using the Marketplace and other CrowdStreet's professional services and products, including through an investment offering identified as Sonata at Columbia Station.

20.     Defendant BDR has failed to pay to CrowdStreet for its professional services and

DECLARATION OF TYLER LEVY
(CASE NO. 2:22-CV-01820-MJP) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

1   products as required by the terms and conditions of the Proposal, the Agreement, the MSA, and

2   the MSA Proposal.

3        21.   Defendant BDR has used CrowdStreets' services from October 2017 to present

4   but has paid CrowdStreet nothing since March 2020.

5        22.   As of February 15, 2023, Defendant BDR owes CrowdStreet $224,671.06

6   pursuant to the terms and conditions the Proposal, the Agreement, the MSA, and the MSA

7   Proposal.

8        23.   Specifically, in connection with the Sonata at Columbia Station, BDR now owes

9   CrowdStreet $172,000.00 for a total of 95 Investor Rooms created and operated from July 2020

10  to present pursuant to the MSA and MSA Proposal. As set forth in the MSA Proposal, the

11  $172,000 reflects both the "one-time solution deployment fee" (the "Solution Deployment Fee")

12  and the "annual solution fees" (the "Annual Solution Fees").

13       24.   The Solution Deployment Fee is a one-time fee due to CrowdStreet calculated by

14  taking the number of Investor Rooms created and multiplying them by the respective price per

15  Investor Room based on a tiered schedule, set forth in the MSA Proposal. Investor Rooms 1-10

16  cost $2,200 per Investor Room. Investor Rooms 11-25 cost $1,600 per Investor Room. Investor

17  Rooms 26-95 cost $1,200 per Investor Room. The Solution Deployment Fee payable by BDR to

18  CrowdStreet in connection with the Sonata at Columbia Station offering totaled $130,000.00;

19  however, the $15,000.00 "onboarding fee" paid to CrowdStreet was credited against the Solution

20  Deployment Fee. Thus, the BDR's Solution Deployment Fee due and payable to CrowdStreet

21  was $115,000. The Solution Deployment Fee remains unpaid.

22       25.   In addition to the Solution Deployment Fee, the MSA Proposal provides that BDR

23  is obligated to pay CrowdStreet the Annual Solution Fee of $200 per Investor Room "on each

24  anniversary of the Effective Date during the Management Phase . . . ." Thus, the Annual Solution

25  Fee for 95 Investor Rooms is $19,000.00. The "Management Phase" is essentially the period

26

DECLARATION OF TYLER LEVY
(CASE NO. 2:22-CV-01820-MJP) - 4

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

following the date the offering closes for new investments through ultimate disposition of the underlying property. BDR has still not disposed of the underlying Sonata at Columbia Station property. BDR has not paid any Annual Solution Fees due to CrowdStreet.

26.     Additionally, BDR now owes CrowdStreet $52,671.06 in connection with services provided by CrowdStreet and utilized by BDR from October 2018 to October 2021 pursuant to the Agreement and Proposal. As detailed in the Agreement and Proposal, the amount reflects the $18,638 annual subscription fee for 350 Investor Rooms maintained and operated between 2018 through 2021, less partial payments made by BDR over the four years and discounts given by CrowdStreet.

27.     Attached as **Exhibit E** is a true and correct copy of an October 25, 2022 letter that I sent to Defendant demanding payment of all amounts due, explaining how the amounts were calculated, and indicating CrowdStreet would have to take legal action if the debt remained unpaid.

28.     Although CrowdStreet requested pre-judgment interest in its Complaint and the sums requested are liquidated, for the ease of calculation of the judgment amount, CrowdStreet waives its right to pre-judgment interest.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

EXECUTED this  15th  day of March, 2023 at Dallas, Texas.

Tyler Levy

DECLARATION OF TYLER LEVY
(CASE NO. 2:22-CV-01820-MJP) - 5

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

142910494.1

# EXHIBIT A

**CrowdStreet**

**Sponsor Direct Proposal**

Expires October 27, 2017

October 27, 2017

Mr. Todd R. Bennett, Founder & Chairman
BDR Holdings, LLC
11100 Main Street, Suite 201
Bellevue, WA 98004

Dear Todd,

CrowdStreet, Inc. ("CrowdStreet") is pleased to offer BDR CAPITAL PARTNERS, LLC ("Customer") the opportunity to license the Sponsor Direct software solution under the following terms and conditions and pursuant to the Sponsor Direct License Agreement dated October 27, 2017 (the "Agreement").

| | |
|---|---|
| **1. Project** | For the purposes of this Proposal, the Sponsor Direct subscription license includes the Product and Services for the Customer's private-label investor portal integrated with www.bdrholdings.com. Customer may upload unlimited investors and offerings. |
| **2. Fees** | A one-time implementation fee of $5,000 shall be charged to set up all offerings (both 40+/- current and 40+/- archived), contacts, documents and distributions. |
| | An annual subscription fee of $18,638 (350 Investor Rooms * $53.25 per Investor Room) will apply for each year of the Initial Term. Payment terms for the first year of the Initial Term will be 50% ($9,319) due upon Effective Date and the remaining 50% ($9,319) balance due upon Customer launching the Customer's private-label portal on their website or 45 days after the Effective Date, whichever is earlier. Payment of the annual subscription fee for year two of the Initial Term shall be on or before October 31, 2018. |
| | Annual subscription fees for Renewal Terms shall be calculated based on the total number of active Investor Rooms at the end of the contract year. Fees will be invoiced and due upon each anniversary date of this Proposal for the Term. |
| | Customer shall receive a 5% discount on all Marketplace fees during the Terms. Investors acquired via a CrowdStreet Marketplace engagement shall not be counted toward total Investor Room quota. |
| **3. Term** | An initial subscription term ("Initial Term") of twenty-four (24) months from Effective Date. Automatic twelve-month subscription renewals ("Renewal Terms") unless either Party provides thirty (30) days written notice of termination prior to the commencement of the renewal term. |

**CrowdStreet**

**4. Product**

The Sponsor Direct solution for the purposes of this proposal and customized to the specifications set forth by Customer, includes:

*Publishing Platform* – Customer-branded portal and application for posting both summary and details for private offerings (images, video, content, documents) that is securely accessed by Customer's existing or prospective investors directly from the Customer's website. This will include either open or restricted access functionality as chosen by Customer and be directly integrated into Customer's website as www.invest.customername.com.

*Transaction Center* – Customer-branded online workflow automation solution for Customer investors to submit an offer, comply with necessary disclosures, review, sign and submit legal documents, complete accredited investor verification process (only if necessary), and submit funding directly to Customer's escrow or operating entity account.

*Investor Rooms* – private web access for centralized investor communications between Customer and Investors (and their affiliated entities) post-closing and throughout the term of the private offering, including account balances, distribution tracking, performance metrics, financial statements, email communications, personalized notes, media assets, tax and general document storage.

*Management Portal* – a management portal that is accessible only to Customer personnel for reviewing and managing all investor leads, offers, signed documents, accredited investor verification, funding, sending periodic updates and other ongoing communication between Customer and its investors.

**5. Services**

CrowdStreet provides the following services as a part of the subscription to Sponsor Direct solution:

*Implementation* – a professional services engineer to:

1. Set up the Customer-branded environment leveraging the styling and color scheme of the Customer website,

2. Establish all the necessary security and privacy protocols,

3. Work with Customer personnel as necessary to set up the environment,

4. Import of existing investors' data and profile information, and set up of investor rooms for all investors in specified offerings.

*Training* – Remote training, as reasonably necessary, for Customer personnel on use of all the products in Sponsor Direct.

*Production* – a production specialist support for development and deployment of the necessary content, images, and other related items for the launch of new offerings and setting up investor rooms for existing portfolio investments.

*Technical and Customer Support* – ongoing call and web-based support for any technical or customer support needs during standard business hours.

# CrowdStreet

**6.  Agreement**     The parties' legal obligations are further set forth in the Sponsor Direct License Agreement whose terms are incorporated by reference.

**Acknowledged & Agreed**

**CUSTOMER: BDR CAPITAL PARTNERS, LLC**

By: _____

Name: _____Tom R. Bennet_____

Title: _____B. Mgr_____

Effective Date: _____10/27/17_____

**CROWDSTREET, INC.**

By: _____Darren Powderly_____

Name: ___Darren Powderly_____

Title: ___VP Business Development_____

Date: ___10/27/17_____

# EXHIBIT B

**CrowdStreet**

## SPONSOR DIRECT LICENSE AGREEMENT

This Sponsor Direct License Agreement ("**Agreement**") is by and between CrowdStreet, Inc., a Delaware corporation with its principal offices located at 610 SW Broadway, Suite 600, Portland, OR 97205 ("CrowdStreet") and the customer identified below ("**Customer**").

| Customer's complete legal name | BDR Capital Partners, LLC |
|---|---|
| State/province/country of formation | WA, USA |
| Address of principal offices | 11100 Main Street, Suite 201<br>Bellevue, WA 98004 |

This Agreement, which is effective as of the date last signed by CrowdStreet or Customer (each a "**Party**" and together the "**Parties**"), states the general terms and conditions applicable to the software-as-a-service Subscription Services (defined below) which CrowdStreet will provide to Customer pursuant to the terms herein and a Proposal ("**Proposal**").

## 1. CERTAIN DEFINITIONS.

"**Customer Website**" means a production website or mobile site owned or operated by Customer and/or its agent; "**Documentation**" means the technical documentation made available by CrowdStreet to Customer that describes the operation and functionality of the Subscription Services; "**Proposal**" means the documents used for placing orders for Services hereunder, which are mutually executed by the Parties, including attached schedules and other addenda thereto, and constitute a binding commitment to purchase the Subscription Services ordered therein; "**Products**" mean the posting platform, transaction center, investor room, and management portal which make up the Sponsor Direct Subscription Services; "**Professional Services**" means professional software engineering, consulting, and other professional services related to the deployment and use of the Subscription Services; "**Services**" means Subscription Services and Professional Services; "**Subscription Services**" means those Products hosted and made available by CrowdStreet on a software-as-a-service basis and ordered by Customer under a Proposal, as further described in the Proposal; "**User**" means each unique, individual user authorized by Customer to interact with the Subscription Services or for whom an electronic record has been established by the Subscription Services; "**User Data**" means personally identifiable electronic data submitted by a User through the use of the Subscription Services or provided by Customer in connection with any Customer use of Subscription Services.

## 2. SUBSCRIPTION SERVICES.

2.1 <u>Purchase and Counting Products</u>.  Subscription Services are purchased as subscriptions with capacity for the number of Products specified in the Proposal. (Subscription Services may be used within one or more production, internal testing and development websites or mobile applications owned or operated by Customer and/or its agent.) A Product is counted during a Subscription Term (a) when the Product is initially configured and launched for use from Customer's Website, or (b) a User has interacted with the Product from the Customer's Website.

2.2 <u>Provisioning and License</u>.  CrowdStreet will make Subscription Services available for Customer's access and use pursuant to this Agreement and the relevant Proposal(s) during the Subscription Term (defined in Section 6.2 below and specified in each Proposal). CrowdStreet, via its third party hosting provider as needed, will set-up and host the Subscription Services, and obtain and maintain the infrastructure necessary to permit Customer, Users, and/or Customer Websites to access (via their respective Internet connections) the Subscription Services in accordance with this Agreement. Subject to the terms and conditions of this Agreement, CrowdStreet hereby grants to Customer a limited, worldwide, non-exclusive, non-transferable license to access, use, perform and display the Subscription Services during the Subscription Term for the number of Products on the number of subscribed Customer Websites, and to allow the subscribed number of Users and Customer Websites to access and use, during the Subscription Term, applicable user-interface portions of the Subscription Services for Customer's business purposes related to managing the Products and/or access to log in to Customer Websites. The foregoing license extends to one or more production or non-production (i.e., internal testing and development) environments and mobile applications that are owned or operated by Customer and/or its agent(s) on behalf of Customer. CrowdStreet also will make available to Customer, for its use, Documentation. (Customer may make a reasonable number of copies of Documentation solely in connection with its use of the Subscription Services.)

2.3 <u>Administrative Rights</u>.  Subscription Services include a restricted-access administrative interface to allow Customer-designated employees or independent contractors ("**Administrative Users**") to access the configuration and settings components so they can manage, configure and monitor the Subscriptions for Customer's benefit.  CrowdStreet will provide each Administrative User designated by Customer with access to and use of the administrative interface.

2.4 <u>Support</u>.  During the Subscription Term and subject to Customer meeting its obligations under this Agreement, CrowdStreet shall provide support to Customer as described in Section 3.1 and Exhibit A, below, and Customer shall be exclusively responsible for providing all support to Customer's Users.  CrowdStreet shall manage and install all upgrades to the Subscription

Services and timely inform Customer of such upgrades.

2.5 <u>Roles</u>. In connection with any Customer use of Subscription Services, Customer may elect to store certain User Data within those services' hosting infrastructure. In this context, the Parties acknowledge Customer's role as the data controller and CrowdStreet's role as a data processor. Accordingly, CrowdStreet shall host and access such User Data only in accordance with Customer instructions. CrowdStreet will not modify User Data or disclose it, except if compelled by law or as expressly instructed in writing by Customer.

2.6 <u>Data Security</u>. CrowdStreet and its hosting provider shall use and maintain appropriate administrative, physical, and technical measures designed to protect any and all CrowdStreet-hosted User Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access. These security measures shall include: (a) user identification and access controls designed to limit access to User Data to Administrative Users and CrowdStreet staff who need access to provide the Services; (b) industry standard firewalls for all data entering internal data network from any external source; (c) industry standard virus protection programs and techniques to prevent harmful software code from affecting the Services or User Data; and (d) industry standard encryption techniques to protect data in transit. All CrowdStreet-hosted User Data shall be maintained in fully audited and ISO 27001, SSAE 16 (formerly SAS 70 Type II), and SOC 2 compliant datacenters.

## 3. USE OF THE SERVICES.

3.1 <u>CrowdStreet Responsibilities</u>. CrowdStreet will: (a) provide the Subscription Services in accordance with the service availability levels set forth in <u>Exhibit A</u>; (b) provide technical support 24 hours a day, 365 days a year via a trouble ticket system in accordance with the support services levels and processes set forth in <u>Exhibit A</u>; (c) provide support regarding Customer's operation and use of the Subscription Services via phone, online services or email, as made available by CrowdStreet, from 9:00 a.m. to 6:00 p.m. U.S. Pacific Time, Monday through Friday (excluding U.S. national holidays recognized by CrowdStreet); and (d) provide the Services in accordance with applicable laws and government regulations.

3.2 <u>Customer Responsibilities</u>. Customer shall (a) establish and enforce terms of use and privacy policies for Users that authorize use of Subscription Services as permitted under this Agreement, (b) be responsible for ensuring the security and confidentiality of Administrative User access passwords, be solely liable for any damages resulting from Customer's failure to maintain such security and confidentiality, and notify CrowdStreet promptly of any unauthorized access or use, and (c) use the Services only in accordance with all applicable laws and government regulations.

3.3 <u>Restrictions</u>. Customer shall not (a) sell, rent or lease the Subscription Services, (b) reverse engineer or otherwise attempt to discover the source code of or trade secrets embodied in the Subscription Services or any portion thereof; (c) distribute, transfer, grant sublicenses, or otherwise make available the Subscription Services (or any portion thereof) to third parties other than Users; (d) embed or incorporate in any manner the Subscription Services (or any element thereof) into applications of Customer or third parties other than subscribed Customer Websites; (e) create modifications to or derivative works of the Subscription Services; (f) reproduce the Subscription Services or Documentation; or (g) in any way access, use, or copy any portion of the Subscription Services code (including the logic and/or architecture thereof and any trade secrets included therein) to directly or indirectly develop, promote, distribute, sell or support any product or service that is competitive with the Subscription Services.

**4. PROFESSIONAL SERVICES.** CrowdStreet will perform Professional Services and provide the deliverables ("**Deliverables**") as described in any mutually executed Proposal. Customer will provide, in a timely manner, all assistance reasonably requested by CrowdStreet in connection with the scoping and delivery of Professional Services. The Parties may change a Proposal only by a written Change Order or Amendment to a Proposal signed by the Parties.

**5. FEES AND PAYMENT**. Subject to the terms and conditions below, all fees for the Services ("**Fees**") will be set forth in the applicable Proposal. Payment obligations are non-cancellable and Fees are non-refundable. (Unless otherwise set forth in a Proposal, each Party is responsible for its own expenses under this Agreement.) All properly invoiced amounts are due and payable in United States currency according to the payment terms agreed to by the as specified in the Proposal. Payments will be sent to the address included on the invoice. Customer will pay applicable, invoiced taxes (excluding those based on CrowdStreet's net income, property, and employees) unless Customer provides CrowdStreet with a valid taxation exemption certificate from the relevant taxing authority.

## 6. TERM AND TERMINATION.

6.1 <u>Agreement Term</u>. This Agreement shall continue in effect until terminated as set forth herein.

6.2 <u>Subscription Term</u>. The term of each subscription will commence on the subscription start date stated in the applicable Proposal and will continue for the period stated on the Proposal, subject to any adjustment and/or renewal as described herein (collectively, the "**Subscription Term**"). Additional Products and Customer Website capacity may be added during the applicable Subscription Term at the pricing stated in an additional Proposal. Any such capacity added will be coterminous with the Subscription Term unless otherwise specified in the Proposal. Each subscription will automatically renew for the same period of time as the initial Subscription Term unless either Party notifies the other at least thirty (30) days prior to the commencement of the renewal term that it does not want the Subscription Term to renew.

6.3 <u>Termination</u>. This Agreement and/or any Proposal, if applicable, may be terminated (a) by either Party if the other Party

breaches this Agreement and does not cure the breach within thirty (30) days after receiving written notice thereof from the non-breaching Party (except that such cure period shall be five (5) days for breaches of Sections 3.3 or 10), (b) by CrowdStreet as set forth in Section 10, or (c) by either Party upon written notice if the other Party becomes the subject of a petition for bankruptcy or any other proceeding relating to insolvency, receivership, liquidation or assignment for the benefit of creditors.

6.4 <u>Effect of Termination</u>.  Upon any termination of this Agreement or an Proposal, without prejudice to any other rights or remedies which the Parties may have, (a) all rights licensed and obligations required thereunder shall immediately cease; provided that Subsection 3.3 and Sections 5, 6, 7, 8, 9, 10, 11, and 17 shall survive termination, (b) Customer will promptly delete and destroy all copies of the Documentation in its possession or control, (c) Customer shall pay to CrowdStreet any outstanding Fees that have accrued under the Agreement and/or Proposal prior to the date of termination.

6.5 <u>Customer Recovery of User Data Following Termination</u>. For a period of 30 days following termination of this Agreement, CrowdStreet will make User Data available to Customer in JavaScript Object Notation format for Customer's download via a RESTful API or in a comma-separated value (CSV) format. Following such 30-day period, unless the Parties agree otherwise in writing, CrowdStreet will destroy the User Data and provide a certificate of such destruction to Customer upon Customer's written request.

**7. PROPRIETARY RIGHTS**.  As between the Parties hereto, Customer will retain all ownership rights in and to all Customer Confidential Information and all pre-existing Customer intellectual property (collectively "**Customer Content**"), and User Data. As between the Parties, CrowdStreet will retain all ownership rights in and to the Subscription Services and the Documentation (except to the extent they include Customer Content), and Customer is permitted to use them pursuant to this Agreement. Customer will own the Deliverables paid for in accordance with this Agreement, except for any CrowdStreet intellectual property incorporated into them. CrowdStreet hereby grants to Customer a non-transferable, non-exclusive, world-wide, royalty-free license to use any CrowdStreet intellectual property incorporated into the Deliverables for the purpose of deploying and utilizing the Subscription Services, including such use of the Deliverables by Customer's agents and independent contractors.  The Parties acknowledge that the goodwill associated with their respective trademarks or service marks belong exclusively to the owner of the marks. All rights not expressly licensed by CrowdStreet under this Agreement are reserved.

**8. CONFIDENTIALITY**.  "**Confidential Information**" means, with respect to a Party (the "**Disclosing Party**"), information that pertains to such Party's business, including, without limitation, technical, marketing, financial, pricing and other information. Confidential Information will be designated and/or marked as confidential when disclosed, provided that any information that the Party receiving such information (the "**Receiving Party**") knew or reasonably should have known under the circumstances, was considered confidential or proprietary by the Disclosing Party, shall be considered the Disclosing Party's Confidential Information even if not designated or marked as such.  User Data shall be considered Customer's Confidential Information. The Receiving Party shall preserve the confidentiality of the Disclosing Party's Confidential Information and treat such Confidential Information with at least the same degree of care that Receiving Party uses to protect its own Confidential Information, but not less than a reasonable standard of care.  The Receiving Party shall use Disclosing Party's Confidential Information only to exercise rights and perform obligations under this Agreement and shall disclose it only to those employees and contractors of the Receiving Party with a need to know such information.  The Receiving Party shall not be liable to the Disclosing Party for the release of Confidential Information if such information: (a) was known to the Receiving Party on or before Effective Date without restriction as to use or disclosure; (b) is released into the public domain through no fault of the Receiving Party; (c) was independently developed solely by the employees of the Receiving Party who have not had access to Confidential Information; or (d) is divulged pursuant to any legal proceeding or otherwise required by law, provided that, to the extent legally permissible, the Receiving Party will notify the Disclosing Party promptly of such required disclosure and reasonably assists the Disclosing Party in efforts to limit such required disclosure.

**9. WARRANTIES AND DISCLAIMERS**. Each Party warrants that it has validly entered into this Agreement and has the legal power to do so. CrowdStreet warrants that (a) the Subscription Services as provided and when used in accordance with the Documentation, will perform in all material respects as specified in such Documentation during the Subscription Term, and (b) CrowdStreet will not knowingly introduce any viruses, worms, time bombs, Trojan horses, or other harmful code designed to permit unauthorized access of the Subscription Services or Customer's computer systems (collectively referred to as "Viruses"). In the event of any breach of the warranties in subsections (a) and (b) above, CrowdStreet will, as its sole liability and Customer's sole remedy, diligently remedy any deficiencies that cause the Services to not conform to the foregoing warranty promptly after its receipt of written notice from Customer.  CrowdStreet will not be liable to the extent that any breach of the foregoing warranties are caused by (1) third-party components not provided by CrowdStreet, including their use in combination with the Subscription Services; (2) unauthorized use or use of the Subscription Services other than in accordance with the Documentation; or (3) Viruses introduced by Customer, its agents, or Users (collectively, "**Exclusions**").  EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, AND EACH PARTY SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.

**10. INDEMNIFICATION**. CrowdStreet shall defend any action against Customer brought by a third party to the extent the action is based upon a claim that the Subscription Services infringe any United States copyright, trademark, or patent or misappropriate any trade secret rights. CrowdStreet shall pay those costs and damages finally awarded against Customer in any such action that are specifically attributable to such claim, or those costs and damages agreed to in a monetary settlement of such action for such a claim. Customer shall defend any third party action brought against CrowdStreet to the extent the action is based upon a claim that User Data, or Customer's use of the Services in breach of this Agreement, infringes or misappropriates the intellectual property rights of a third party or violates applicable law. Customer shall pay those costs and damages finally awarded against CrowdStreet in any such action that are specifically attributable to such claim or those costs and damages agreed to in a monetary settlement of such action for such a claim. The foregoing obligations are conditioned on the indemnified Party notifying the indemnifying Party promptly in writing of such action, the indemnified Party giving the indemnifying Party sole control of the defence thereof and any related settlement negotiations, and the indemnified Party cooperating and, at the indemnifying Party's reasonable request and expense, assisting in such defence.  If the Subscription Services (or any component thereof) become, or in CrowdStreet's opinion is likely to become, the subject of an infringement claim, CrowdStreet may, at its option and expense, either (i) procure for Customer the right to continue exercising the rights granted to Customer in this Agreement, or (ii) replace or modify the Services so that it becomes non-infringing and remains functionally equivalent.  If neither of the foregoing options are, in CrowdStreet's reasonable opinion, commercially reasonable, CrowdStreet may terminate this Agreement and will refund to Customer a pro-rata portion of any applicable prepaid Fees.  Notwithstanding the foregoing, CrowdStreet will have no obligation under this Section 10 or otherwise with respect to any infringement claim based upon any Exclusion.  This Section 10 states CrowdStreet's entire liability, and Customer's sole and exclusive remedy, for infringement claims and actions.

**11. LIMITATION OF LIABILITY**. NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR ANY LOSS OF REVENUE OR PROFITS (EXCLUDING FEES OWED UNDER THE AGREEMENT) PUNITIVE DAMAGES HOWEVER CAUSED, WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, AND WHETHER THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  THE FOREGOING DISCLAIMER SHALL NOT APPLY TO THE EXTENT PROHIBITED BY APPLICABLE LAW. CROWDSTREET'S AGGREGATE LIABILITY WITH RESPECT TO ANY SINGLE INCIDENT ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER IN CONTRACT OR TORT OR UNDER ANY OTHER THEORY OF LIABILITY) SHALL NOT EXCEED THE AMOUNT PAID BY CUSTOMER HEREUNDER IN THE 12 MONTHS PRECEDING THE INCIDENT, PROVIDED THAT IN NO EVENT SHALL CROWDSTREET'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER IN CONTRACT OR TORT OR UNDER ANY OTHER THEORY OF LIABILITY) EXCEED THREE TIMES THE TOTAL AMOUNT PAID BY CUSTOMER HEREUNDER. THE FOREGOING SHALL NOT LIMIT CUSTOMER'S PAYMENT OBLIGATIONS UNDER SECTION 5 (FEES AND PAYMENT).

**12. MARKETING**.  Customer grants to CrowdStreet the right to use Customer's name and logo on CrowdStreet's website and in presentations mentioning CrowdStreet customers. CrowdStreet may invite Customer to participate in marketing programs such as press releases, case studies or best practice showcases, provided that CrowdStreet will provide Customer with prior written notice and the opportunity to contribute, review and approve any such marketing, sales and/or public relations materials prior to use. Customer shall be deemed to have approved any such materials if Customer does not object to the materials submitted for approval within five business days of receipt of such notice.

**13. INJUNCTIVE RELIEF**.  The Parties acknowledge that the Subscription Services and each Party's Confidential Information are each unique property, and the unauthorized use thereof will cause the injured Party irreparable harm that may not be adequately compensated by monetary damages.  Accordingly, the Parties agree that the injured Party will, in addition to other remedies available to it at law or in equity, be entitled to seek injunctive relief to enforce the terms of this Agreement, including to prevent any actual or threatened unauthorized use of each Party's Confidential Information, the Subscription Services, or any information or data contained therein.

**14. STATISTICAL INFORMATION**.  CrowdStreet may compile, use, and publicly disclose anonymized, statistical information related to the use and performance of its Subscription Services by its customers, provided that such information does not include any User Data, personally identifiable information, or Confidential Information, or identify any Customer or User.

**15. FORCE MAJEURE**.  Neither Party will be responsible for failure or delay of performance if cause by reason of an act of war, hostility, or sabotage; act of God; electrical, Internet, or telecommunication outage that is not caused by the obligated Party; governmental restrictions; or other event outside the reasonable control of the obligated Party. Both Parties will use reasonable efforts to mitigate the effect of a force majeure event and the obligations and rights of the Party so excused will be extended on a day-to-day basis for the period of time equal to that of the underlying cause of the delay.  This Section does not excuse either Party's obligation to take reasonable steps to follow its normal disaster recovery procedures or Customer's obligation to pay for the Services.

**16. COMPLETE AGREEMENT**. This Agreement incorporates herein by reference each Proposal and any schedules, exhibits, amendments, or change orders thereto. This Agreement constitutes the complete agreement between the Parties and supersedes all prior and contemporaneous agreements, proposals or representations, whether oral or written, concerning its subject matter. No modification, amendment, or waiver of any provision of this Agreement shall be effective unless it specifically refers to this Agreement, is in writing, and is signed by the Parties. In the event of any inconsistency between a Proposal and other parts of this Agreement, the terms of a Proposal shall be controlling. The terms on any purchase order or similar document submitted by Customer to CrowdStreet (other than the Proposal) will have no effect on this Agreement and are hereby rejected.

**17. MISCELLANEOUS**. The Parties are independent contractors. This Agreement does not create a partnership, franchise, joint venture, agency, fiduciary, or employment relationship between the Parties. There are no third party beneficiaries to this Agreement. No failure or delay by either Party in exercising any right under this Agreement shall constitute a waiver of that right. The terms of this Agreement shall be binding on the Parties, and all successors to the foregoing. Neither Party will assign, transfer or delegate its rights or obligations under this Agreement (in whole or in part) without the other Party's prior written consent except pursuant to a transfer of all or substantially all of such Party's business and assets, whether by merger, sale of assets, sale of stock, or otherwise. Any attempted assignment, transfer or delegation in violation of the foregoing shall be null and void. This Agreement shall be governed by an interpreted in accordance with the laws of the State of Oregon, U.S.A. without regard to Oregon's conflict of laws rules. The exclusive venue and jurisdiction for any claim or lawsuit arising from or related to this Agreement shall be the appropriate state or federal court located in the county in which the defendant Party has its principal place of business. The prevailing Party shall be entitled to recover reasonable attorney's fees and other costs from the other Party in addition to any other relief to which the prevailing Party may be entitled. The United Nations Convention on Contracts for the International Sale of Goods will not apply to the interpretation or enforcement of this Agreement. If any provision of this Agreement is held to be null, void or otherwise ineffective or invalid by a court of competent jurisdiction, (a) such provision shall be deemed to be restated to reflect as nearly as possible the original intentions of the Parties in accordance with applicable law, and (b) the remaining terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect. All notices, consents and approvals under this Agreement must be delivered in writing by courier, by facsimile, or by certified or registered mail, (postage prepaid and return receipt requested) to the other Party at the address set forth on at the beginning of this Agreement and are deemed delivered when received. This Agreement may be executed in counterparts.

IN WITNESS WHEREOF, the Parties hereto have caused their duly authorized representatives to execute this Agreement as of the date written below.

**CUSTOMER: BDR CAPITAL PARTNERS, LLC**   **CROWDSTREET, INC.**

By:_____   By:_ *Darren Powderly* _____

Name:_____   Name:__ Darren Powderly _____

Title:_____   Title:__ VP Business Development _____

Date:_____   Date:__ 10/27/17 _____

**EXHIBIT A**

**SERVICE AVAILABILITY LEVELS**

**Uptime Commitment:**  CrowdStreet will use commercially reasonable efforts to ensure that the Subscription Services will be available at least 99.9% of the time, as measured monthly and calculated by subtracting from 100% the total percentage of one (1) minute periods during the monthly service period for which there is no external connectivity and/or the Subscription Services does not service obligatory data requests as required for functionality in accordance with this Agreement, subject to the exclusions set forth below and also excluding scheduled downtime and any time necessary to implement updates, upgrades or other modifications to the Subscription Services ("**Uptime Commitment**").  CrowdStreet will notify Customer (a) at least twenty-four (24) hours prior to any scheduled downtime and will use commercially reasonable efforts to minimize the effect of such maintenance on the Hosting Services and (b) as soon as practicable following any known and verified unscheduled downtime.

**Exclusions:**  The Uptime Commitment shall not apply in the event that (i) any equipment (not in the custody or control of CrowdStreet or its third party hosting provider) malfunctions; or (ii) there is an occurrence of one (1) or more causes beyond the control of CrowdStreet or its hosting provider, including, without limitation, interruption or failure of telecommunication or digital transmission links, hostile network attacks, network congestion, denial of service attacks, failure of the Internet generally, or any actions or inactions by you or any third party.

**Service Credits:**  If CrowdStreet fails to meet the required Uptime Commitment in a particular calendar month, Customer shall be entitled (as its sole and exclusive remedy) to a credit as set forth below (each an "**Uptime Credit**").  Any Uptime Credit issued for a particular month will be calculated as a percentage of the actual subscription Fees for such month and will be determined as follows:

| Actual Uptime Percentage | Uptime Credit %: |
|---|---|
| ≥99.9% | 0% of subscription Fee |
| ≥ 98.5% but < 99.9% | 25% of subscription Fee |
| < 98.5% | 100% of subscription Fee |

The Uptime Credits will be issued as a credit against future subscription Fees or, if no additional subscription Fees are payable when the Agreement terminates, will be provided to Customer in the form of a refund paid within thirty (30) days after the claim submission date.  All requests for credits must be received within ten (10) business days after the end of the calendar month during which such credit accrued.  All claims are subject to verification by CrowdStreet.

**TECHNICAL SUPPORT SERVICES**

1.   **Customer Obligations.**  Customer agrees to provide CrowdStreet with all information and materials requested by CrowdStreet for use in replicating, diagnosing and correcting an error or other problem with the Subscription Services reported by Customer.  Customer acknowledges that CrowdStreet's ability to provide satisfactory support services is dependent on CrowdStreet having the information necessary to replicate the reported problem with the Subscription Services. Load testing is not permitted. Customer should contact CrowdStreet if they believe they have a need for load testing. Customer agrees not to run scripts that could endanger the performance of the Subscription Services without CrowdStreet's prior explicit permission.

2.   **Items Not Covered by Support Services.**  CrowdStreet is not obligated to provide support services for errors or problems caused by the following:

   (a)   third-party components not provided by CrowdStreet; or

   (b)   use of the Subscription Services other than as described in the Documentation.

3.   **Response Times.**  CrowdStreet shall comply with the response times set forth below based on the severity level of the particular error.

| Severity Level | Definition | Response |
|---|---|---|
| Critical | A Critical Severity issue has significant to critical business impact on a production system, resulting in Customer's use of the Subscription Services being either down, or functioning at a significantly reduced capacity. | CrowdStreet agrees that it will provide a response by a qualified member of its staff to begin to diagnose and to correct a Critical Severity fault within sixty (60) minutes after notification by Customer. CrowdStreet will use commercially reasonable efforts to resolve Critical Severity faults as soon as possible. |
| Medium | A Medium Severity issue has some business impact on the Subscription Services, resulting in some functionality loss on Customer's use of the Subscription Services.  The Subscription Services is usable, but does not provide a function in the most convenient or expeditious manner. | CrowdStreet agrees that it will provide an initial response by a qualified member of its staff to begin to diagnose a Medium Severity fault within one (1) business day of notification by Customer. CrowdStreet will use commercially reasonable efforts to resolve Medium Severity faults within five (5) business days or in the next update of the Subscription Services, whichever is sooner. |
| Low | A Low Severity issue is for non-production questions including general usage questions, issues related to a non-production environment, or feature requests. There is no impact on the quality, performance or functionality on Customer production system. | CrowdStreet agrees that it will provide an initial response by a qualified member of its staff to begin to diagnose a Low Severity fault within five (5) business days of notification by Customer. CrowdStreet does not guarantee a resolution time for Low Severity incidents. |

# EXHIBIT C

# CROWDSTREET MARKETPLACE SERVICES AGREEMENT

This CrowdStreet Marketplace Services Agreement (this "Agreement"), dated as of _____12/13/2019_____ (the "Effective Date"), is by and between CrowdStreet, Inc. ("CrowdStreet") and the party indicated on the signature page to this Agreement ("you" or "Sponsor").  Capitalized terms used but not immediately defined in this Agreement shall have the meanings ascribed to them in Appendix A.

WHEREAS, CrowdStreet maintains a commercial real estate investor technology platform which includes the following: (i) the "Publishing Platform", a comprehensive website for posting the details of an Offering (images, video, content, documents) that is accessible by investors via the Website; (ii) the "Transaction Center", the online workflow automation for investors to submit an offer, comply with necessary disclosures, review, sign and submit legal documents, complete the accredited investor verification process, and submit funding directly to Sponsor's escrow account; (iii) the "Management Console", the administrative portal and dashboard that is accessible to Sponsors for reviewing investor leads, offers, signed documents, accredited investor verification, funding, and investor communication; and (iv) the "Investor Rooms", the centers for communication between Sponsors and investors post-closing and throughout the term of a Project, including account balances, distribution tracking, performance metrics, financial statements, email communications, personalized notes, media assets, tax and general document storage (collectively, the "CrowdStreet Marketplace");

WHEREAS, you or your Affiliate serves or will serve as the sponsor of one or more real estate investment offerings with respect to which you wish to use the CrowdStreet Marketplace (the "Proposed Projects").

NOW THEREFORE, you and CrowdStreet agree as follows:

Section 1.    PROJECTS AND TERMS OF SERVICE

    1.1    Designation

CrowdStreet shall have the right in its sole discretion to accept or reject Proposed Projects for inclusion on the CrowdStreet Marketplace.  Any accepted Proposed Project (a "Project" or "Offering") shall be described in and subject to additional terms as set forth in a separate CrowdStreet Marketplace Proposal entered into by and between you and CrowdStreet (a "Proposal").  Each Project shall be listed on the Website as a "current offering" for the period set forth in the applicable Proposal, which period may be extended with CrowdStreet's written consent, or earlier terminated as provided herein, including Section 2.4 and Section 9.

    1.2    Terms of Service

Your use of the CrowdStreet Marketplace and the Services is subject to your acceptance of this Agreement and the operating rules and policies governing the use of the Website generally (including, without limitation, the Terms of Services and Privacy Policy posted

on the Website on the Effective Date) and any future modifications or additional terms that may be published from time to time on the Website or otherwise provided to you in writing. You agree that your continued use of the CrowdStreet Marketplace and Website after publication or notice of changed or additional terms constitutes acceptance of such changed or additional terms.

You acknowledge and agree that CrowdStreet is not a registered broker-dealer, investment advisor or funding portal.

Section 2.      USE OF CROWDSTREET MARKETPLACE

2.1      Registration and Account Management

In order to access the CrowdStreet Marketplace you must create an account and become a registered user. You agree that any information you provide to CrowdStreet upon registration for an account and at all other times your account remains open and active will be true, current, and complete. You are responsible for maintaining the confidentiality of your user name and password and for any and all activities and postings that are made using your account. You agree to notify CrowdStreet immediately if you suspect that an unauthorized person has accessed your account.

2.2      Posting and Removal of Information

CrowdStreet is under no obligation to, and will not, verify the materials or information you provide for inclusion on the CrowdStreet Marketplace or Website. CrowdStreet may format the information provided about a particular Project to conform the look and feel of such Project's offering detail page to those of other projects posted on the Website. You are responsible for any materials CrowdStreet prepares, edits, modifies, or formats on your behalf, provided that you are given an opportunity to review and approve such materials. Any materials provided to you in writing by CrowdStreet will be deemed approved within three business days, unless you notify CrowdStreet in writing of non-approval. CrowdStreet may remove any materials or information (or portions thereof) in the event it violates this Agreement or if CrowdStreet has any reason to believe that the materials or information may violate a third party's intellectual property or other rights, is defamatory, is inaccurate, or may otherwise expose CrowdStreet (or its other sponsors or Users) to liability or damage to business or reputation. You agree that any materials or information sent or distributed to investors (or prospective investors) with respect to a Project or made available on the Website will be in compliance with applicable Federal, state and non-U.S. securities and other laws.

2.3      Compliance with Laws

You agree to use the CrowdStreet Marketplace only for purposes that are legal, proper and in accordance with all applicable laws, rules, and regulations, including, without limitation, the Securities Act of 1933, the Securities Exchange Act of 1934, any applicable state "blue sky" laws, any other applicable U.S. federal or state laws, rules, or regulations, and any applicable foreign laws. You agree that you shall be solely responsible for complying with all state and federal securities laws and you shall take such steps as are necessary to ensure that

all activity pertaining to each Offering is in compliance with applicable state and federal securities laws and any applicable exemptions.

2.4     Suspension and Termination of Services

CrowdStreet may deny, suspend, or terminate your account and access to the CrowdStreet Marketplace if CrowdStreet believes that you are in breach of any material term of this Agreement, are using the CrowdStreet Marketplace in an unauthorized or fraudulent manner or in any way that may expose CrowdStreet (or its other sponsors or Users) to liability or damage to business or reputation; provided that CrowdStreet will use its best efforts to provide you prompt notice of any such denial, suspension or termination.

Section 3.     FEES

3.1     Fees; Adjustment

You agree to pay CrowdStreet for use of the CrowdStreet Marketplace and the Services purchased on or through your account as set forth herein and in each Proposal, or otherwise as mutually agreed in writing from time to time.

In the event of any *unplanned* capital calls (i.e., capital calls in excess of the subscription or committed capital amount) that require additional project engagement by CrowdStreet, Customer shall be subject to an additional $7,500 **additional engagement fee** per instance, which will be due upon receipt of invoice, unless otherwise agreed by CrowdStreet.

3.2     Payment

Fees will be billed and must be paid as set forth herein or in each Proposal. CrowdStreet will bill you all applicable charges through the payment method specified in your account.  For credit or debit card payments, CrowdStreet may seek pre-authorization of your card prior to your purchase to verify that the card is valid and has the necessary credit or funds available.

Section 4.     REPRESENTATIONS, WARRANTIES AND AGREEMENTS

4.1     Sponsor Representations, Warranties and Agreements

You represent, warrant and agree as of the Effective Date, and as of the date of the closing of each Project ("Closing Date"), to each of the provisions as set forth on Appendix B as it may be amended in writing from time to time.

4.2     CrowdStreet Representations, Warranties and Agreements

CrowdStreet represents, warrants, and agrees as of the Effective Date, and as of each Closing Date, to each of the provisions as set forth on Appendix C as it may be amended

in writing from time to time.

4.3     Covenants and Conditions Applicable to Each Closing

You agree to use best efforts to comply with covenants and satisfy conditions at or prior to each Closing as set forth on Appendix D as it may be amended in writing from time to time..  Sponsor agrees that it will accept all investor subscriptions on a "first come, first served" basis, and will only reject investors in good faith for reasons other than their subscription amount (i.e., Sponsor will not give priority to investors with larger subscription amounts).

Section 5.     OWNERSHIP OF MATERIALS; USER CONTENT

5.1     CrowdStreet Materials

(a)     Ownership.  CrowdStreet and its affiliates own all right, title and interest in the CrowdStreet Materials, whether registered or unregistered.  The CrowdStreet Materials are protected by copyright, trademark, patent, trade secret, and other intellectual property laws and proprietary rights.  You agree to comply with all applicable laws by not copying or using proprietary content, except as allowed by this Agreement or by written consent of the owner of the proprietary rights.

(b)     License.  CrowdStreet hereby grants you a non-exclusive, revocable, non-transferable license to download and print the CrowdStreet Materials for your use in connection with this Agreement, provided that you retain all copyright and proprietary notices that are contained in such portion of the CrowdStreet Materials.  You may not modify, distribute, share, disclose, transmit, display, reproduce, publish, license, create derivative works from, transfer, or otherwise use the CrowdStreet Materials in any other way, except with the prior written permission of CrowdStreet.  You agree that you will not develop or assist anyone else with developing a website or materials that are substantially similar to or based in substantial part on the CrowdStreet Materials.  Your access to or use of the CrowdStreet Marketplace or the Website does not grant or transfer to you ownership interest or any rights in the CrowdStreet Materials other than those rights expressly granted in this Agreement or the Terms of Use.

5.2     Your Materials

It is expected that Sponsor will submit, post, transmit and share certain Sponsor Materials.  You are solely responsible for all Sponsor Materials that you, directly or indirectly, post, transmit, or share on or through the CrowdStreet Marketplace or Website, as well as for any actions taken by CrowdStreet or Users in reliance on your Sponsor Materials.  CrowdStreet may provide feedback on Sponsor Materials as part of its due diligence process.  Any such feedback should not be considered legal advice or a substitute for legal advice and should be considered in consultation with your legal advisors, and you will in all events be responsible for Sponsor Materials as provided herein.

You retain all right, title, and interest in your Sponsor Materials, except to the extent of modifications by CrowdStreet as part of the Services.  By posting, transmitting, or sharing your Sponsor Materials on or through the Website, you hereby (a) grant to CrowdStreet and its affiliates, sublicensees, partners, designees, and assignees, a worldwide, non-exclusive, fully paid-up, royalty-free, perpetual, irrevocable, sublicensable, and transferable license to use,

reproduce, distribute, modify, adapt, prepare derivative works of, publicly display, publicly perform, and otherwise display your Sponsor Materials and derivatives thereof in any media form and for the purposes for which they were provided, and (b) grant to Users of the Website a non-exclusive license to access or otherwise use your Sponsor Materials in connection with their use of the Website. For the avoidance of doubt, all Sponsor Materials that are posted, transmitted or shared on the Website, will generally be available to investors for an indefinite period.

You hereby affirm, represent, and warrant that: (i) you either own the Sponsor Materials or have the necessary rights and permissions to grant the rights and license set forth herein, and (ii) the Sponsor Materials and any use of the Sponsor Materials pursuant to this Agreement, does not and will not: (A) infringe, violate, or misappropriate any third-party right, including any intellectual property or proprietary right; (B) violate any applicable laws, rules, or regulations (including, without limitation, U.S federal and state securities laws); or (C) require CrowdStreet to obtain a license or permission from or pay fees to any third party.

5.3    User Content

You agree and understand that you may be exposed to User Content that is inaccurate, inappropriate, misleading, unlawful, offensive or otherwise objectionable, and that CrowdStreet makes no representations or warranties regarding User Content and is not responsible for the accuracy, usefulness, or intellectual property rights of or relating to User Content. You agree to waive, and hereby do waive, any legal or equitable rights or remedies you have or may have against CrowdStreet with respect to User Content.

CrowdStreet has no obligation to monitor, review or control, and does not guarantee the accuracy or confidentiality of, User Content. However, CrowdStreet reserves the right (but will not have an obligation) to remove or edit any User Content in its sole discretion, with or without notice. Without limiting the generality of the preceding sentence, CrowdStreet complies with the Digital Millennium Copyright Act, and will remove User Content from the Website upon receipt of a compliant takedown notice.

Section 6.    ADDITIONAL TERMS

6.1    Sponsor Investor Management

During the Fundraising Phase (as defined in the Proposal), on behalf of Sponsor, CrowdStreet will distribute communications to investors regarding the Project. Sponsor shall promptly respond to CrowdStreet representative or investor questions via the Management Console, email, phone or other communication method.

During the Management Phase (as defined in the Proposal), Sponsor shall provide quarterly reports within 45 days of the end of each quarter including the following information: (i) financial statements; (ii) updates specific to the Project highlighting construction, occupancy, and leasing activity (as applicable); (iii)  updates on local market conditions; and (iv) information about any distributions made during such quarter.  Additionally, Sponsor shall provide information about the source of distributions whenever distributions are made.  Sponsor shall deliver to investors final Schedule K-1s for the Project by March 15th of each year.

DocuSign Envelope ID: E7D85BB1-5C29-471C-89B7-239A032A19BC

All communications to investors pursuant to this Section 6.1 shall be made through the Management Console.

Sponsor acknowledges that CrowdStreet may communicate directly with investors regarding any Project, including responding to investor questions or requests for information. Furthermore, CrowdStreet may use basic information from the detail page (e.g., targeted IRR, targeted hold period), as well as distribution information provided through the Management Console, to produce a summary document available to Users; provided such Users agree to hold the information in strict confidence.

6.2   Funding

Sponsor shall establish an escrow or separate bank account for each Project's investor contributions. Sponsor shall provide funding instructions to investors via the Management Console for delivery to the investors. All investor contributions shall be deposited into the escrow or separate bank account until closing. In the event a Project fails to close, investor contributions will be promptly returned.

6.3   Best Efforts Platform and Withdrawal of Projects

CrowdStreet is a "best efforts" platform. You may not remove any Project from the CrowdStreet Marketplace due to failure to raise sufficient capital. In the event you remove any Project from the CrowdStreet Marketplace after it is posted on the Publishing Platform but prior to the creation of Investor Rooms, you will be subject to a break fee equal to the lesser of (i) $100,000 or (ii) 5% of the estimated target raise (as set forth on Exhibit A to the applicable Proposal). You will also be subject to a break fee equal to the same amount in the event you withdraw your Project prior to posting on the Publishing Platform. Any such break fees will be due upon receipt of an invoice by CrowdStreet. Sponsor agrees that it will accept all investor subscriptions on a "first come, first served" basis, and will only reject investors in good faith for reasons other than their subscription amount (i.e., Sponsor will not give priority to investors with larger subscription amounts).

6.4   Marketing

CrowdStreet shall facilitate your marketing efforts as agreed and approved by Sponsor. These efforts may include: asset photography and video production, press release and media outreach, webinars and blog articles, online advertisement creation, advertising placement (search, social and a variety of targeted web sites), social media promotion, email marketing, sponsor templates, investor engagement tracking and lead scoring, and other activities for an Offering as set forth in a separate contract between CrowdStreet and Sponsor or as otherwise mutually agreed to in writing by CrowdStreet and Sponsor.

Post-funding, Sponsor agrees to participate in either a case study in the form of a webinar, live stream, video or written case study to convey the experience and process with CrowdStreet.

Section 7.     <u>CONFIDENTIALITY</u>

All information obtained through the CrowdStreet Marketplace is confidential. You may not disclose or use such confidential information (including investor information) for any purpose other than for the purpose of interacting with a potential investor pursuant to this Agreement.

This Section 7 does not apply to information which (i) is or becomes generally available to the public other than as a result of a disclosure by you or your representatives in violation of this Agreement, (ii) is or was developed independently by you (such as your Sponsor Materials), (iii) becomes available to you on a non-confidential basis from a third party, provided that the third party was not bound by an obligation of confidentiality to CrowdStreet or an investor, or (iv) is required to be disclosed by law, rule or regulation, provided that you promptly notify CrowdStreet (to the extent permitted by law, rule or regulation) in order to provide CrowdStreet an opportunity to seek a protective order or other relief with respect to such impending disclosure.

Section 8.     <u>EXCLUSIVITY; NON-SOLICITATION AND NON-CIRCUMVENTION</u>

8.1     <u>Exclusivity</u>

You agree that each Project listed on the CrowdStreet Marketplace will be an exclusive posting to CrowdStreet and will not be marketed or advertised on any other online third-party intermediary funding platform, except as otherwise agreed in writing by the parties.

8.2     <u>Non-Solicitation and Non-Circumvention</u>

DocuSign Envelope ID: E7D85BB1-5C29-471C-89B7-239DA32A19BC

You understand that CrowdStreet prohibits any attempt to divert investors away from the Marketplace. Therefore, you agree not to circumvent or attempt to circumvent CrowdStreet or the CrowdStreet Marketplace in relation to Users, Project(s) or future investment offerings. **You explicitly agree that (i) you shall use the Management Console for all written investor or prospective investor communications during the Management Phase of a Project and (ii) you shall not directly solicit or send your general marketing materials or market future offerings directly to Users or prior users (unless such Users or prior users invested in Sponsor offering(s) prior to Sponsor's relationship with CrowdStreet) without the written notification and prior approval from CrowdStreet by emailing a request to ir@crowdstreet.com.** Any agreement to the contrary shall be agreed to in each Proposal including fees and communication processes. You agree that money damages would not be a sufficient remedy for any breach of this Agreement and that CrowdStreet will be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach, and you further agree to waive any requirement for the securing or posting of any bond in connection with such remedy. Such remedy will not be deemed to be the exclusive remedy for breach of this Agreement, but will be in addition to all other remedies available at law or equity**.**

Section 9.       <u>TERM AND TERMINATION</u>

   9.1       <u>Term</u>

This Agreement shall commence as of the Effective Date and shall continue until the date that is six months after the date on which there are any outstanding Projects, unless sooner terminated pursuant to this Section 11.

   9.2       <u>Termination by CrowdStreet</u>

Other than with respect to current Projects, subject to Section 2.4, you agree that CrowdStreet may terminate this Agreement, your account, and your right to use the CrowdStreet Marketplace or the Website at any time upon 5 days' prior written notice to Sponsor; provided that the parties shall continue to be subject to this Agreement with respect to any Project for the entire duration of such Project, subject to Section 2.4.

   9.3       <u>Termination by You</u>

Other than with respect to current Projects, you may terminate this Agreement at any time upon 5 days' prior written notice to CrowdStreet. If you terminate this Agreement, you will remain obligated to pay all charges, if any, relating to your use of the CrowdStreet Marketplace and Services provided by CrowdStreet prior to termination and for the remaining term of any Management Phase of a particular Project(s). Notwithstanding any termination of this Agreement by you, the representations, warranties and agreements you have made will survive any termination of this Agreement for an indefinite period or until expiration by their express terms.

   9.4       <u>Effect of Termination</u>

Upon any expiration or termination of this Agreement, whether by you or CrowdStreet, CrowdStreet may remove and destroy all or any part of the information uploaded by you. CrowdStreet will have no obligation to maintain any such information in its databases or

DocuSign Envelope ID: E7D85BB1-SC29-471C-89B7-239A32A19BC

to forward any such information to you or any third party. The provisions in Sections 3 (Fees), 7 (Confidentiality), 8 (Exclusivity; Non-Solicitation and Non-Circumvention), 10 (No Warranties), 11 (Mutual Indemnification), 12 (Limitation on Liabilities) and 13 (Miscellaneous) of this Agreement, as well as those terms which are intended by their nature to survive, shall survive termination.

Section 10.    NO WARRANTIES

THE SERVICES, THE CROWDSTREET MARKETPLACE, THE WEBSITE, THE CROWDSTREET MATERIALS, THE USER CONTENT, AND ANY OTHER INFORMATION OR MATERIALS MADE AVAILABLE IN CONJUNCTION WITH OR THROUGH THE WEBSITE OR UNDER THIS AGREEMENT ARE PROVIDED "AS IS," "AS AVAILABLE" AND "WHEN AVAILABLE" WITHOUT WARRANTIES OF ANY KIND.    TO THE FULLEST EXTENT PERMISSIBLE BY LAW, CROWDSTREET DISCLAIMS ALL WARRANTIES, WHETHER STATUTORY, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, EXPRESS AND IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, COMPLIANCE WITH LAWS, CORRECTNESS, ACCURACY, AND RELIABILITY.    WITHOUT LIMITING THE FOREGOING, CROWDSTREET MAKES NO REPRESENTATION OR WARRANTY THAT USE OF THE SERVICES AND WEBSITE WILL BE UNINTERRUPTED, ERROR-FREE, FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS OR COMPLIANCE WITH SECURITIES REGULATIONS. YOU ARE SOLELY RESPONSIBLE FOR ENSURING COMPLIANCE WITH STATE AND FEDERAL REGULATIONS.

CROWDSTREET IS NOT A REGISTERED BROKER, DEALER, FUNDING PORTAL OR INVESTMENT ADVISOR AND NOTHING HEREIN WILL CONSTITUTE A SALE OR OFFER TO BUY OR SELL OR RECOMMEND ANY SECURITIES BY CROWDSTREET. CROWDSTREET DOES NOT PROVIDE BUSINESS, INVESTMENT, LEGAL OR TAX ADVICE. CROWDSTREET'S SOLE ROLE IS TO PROVIDE THE SERVICES AND ACCESS TO THE WEBSITE, WHICH IS A TECHNOLOGY PACKAGE THAT ENABLES INVESTORS AND SPONSORS TO SHARE A COMMUNITY OF IDEAS, INVESTMENT OPPORTUNITIES, AND ONGOING COMMUNICATIONS. CROWDSTREET HAS NO OBLIGATION TO INVESTIGATE WHETHER ANY USER IS AN ACCREDITED INVESTOR AS DEFINED IN RULE 501 OF REGULATION D. (CROWDSTREET DOES, HOWEVER, PARTNER WITH A THIRD-PARTY PROVIDER, WHICH CAN    PROVIDE ACCREDITED INVESTOR VERIFICATION DOCUMENTS FOR YOUR REVIEW, APPROVAL AND ACCEPTANCE.) CROWDSTREET IS NOT RESPONSIBLE FOR AND WILL HAVE NO LIABILITY WITH RESPECT TO THE ACTIONS, STATEMENTS, REPRESENTATIONS, OR OMISSIONS OF ANYONE USING THE WEBSITE.

CROWDSTREET DOES NOT AGREE TO ANY OBLIGATIONS OF CONFIDENTIALITY, NONDISCLOSURE OR NONUSE, EXCEPT AS EXPLICITLY PROVIDED FOR IN CROWDSTREET'S PRIVACY POLICY OR OTHERWISE ON THE WEBSITE.

SPONSOR FURTHER UNDERSTANDS AND AGREES THAT CROWDSTREET DOES NOT PURPORT TO MAKE ANY REPRESENTATION, WARRANTY, OR GUARANTEE THAT ANY ACTIVITY BY SPONSOR (OR ITS AFFILIATES) OR CROWDSTREET, WHETHER THROUGH THE WEBSITE OR NOT, IS IN COMPLIANCE WITH APPLICABLE STATE OR

FEDERAL SECURITIES LAWS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SPONSOR IS REQUIRED TO ENSURE THAT ALL ACTIVITY IT TAKES PART IN PERTAINING TO THE SECURITIES OFFERINGS ON CROWDSTREET IS IN COMPLIANCE WITH APPLICABLE STATE AND FEDERAL SECURITIES LAWS AS THE SPONSOR SHALL BE SOLELY RESPONSIBLE FOR COMPLYING WITH ALL LAWS. SPONSOR SHALL AT ALL TIMES COMPLY WITH REGULATION D OF THE SECURITIES ACT OF 1933, AS AMENDED, AND SHALL NOT HAVE ANY DISQUALIFYING EVENT UNDER RULE 506(D). SPONSOR AGREES THAT IT, AND NOT CROWDSTREET, SHALL HAVE THE SOLE OBLIGATION OF VERIFYING THAT EACH INVESTOR IS AN ACCREDITED INVESTOR AS DEFINED IN RULE 501 OF REGULATION D.

Section 11.    MUTUAL INDEMNIFICATION

To the fullest extent permissible by applicable law, you agree to defend, indemnify, and hold CrowdStreet and its directors, officers, employees, attorneys, accountants, and agents ("Representatives") harmless from any claim, demand, loss, damage, liability, or expense, including reasonable attorney fees and other costs, however incurred, including those incurred at trial, in any bankruptcy proceeding, on appeal, and on any petition for review (collectively, "Damages") to the extent such Damages result directly or indirectly from your use of the CrowdStreet Marketplace or any Project, subject to the following paragraph.

To the fullest extent permissible by applicable law, CrowdStreet agrees to defend, indemnify, and hold Sponsor and its Representatives harmless from any Damages to the extent such Damages result from CrowdStreet's breach of this Agreement.

Section 12.    LIMITATION OF LIABILITY

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, CROWDSTREET'S LIABILITY TO YOU UNDER THIS AGREEMENT OR OTHERWISE WILL BE LIMITED TO AMOUNTS PAID BY YOU TO CROWDSTREET PURSUANT TO THIS AGREEMENT; PROVIDED THAT CROWDSTREET'S LIABILITY TO YOU UNDER THIS AGREEMENT OR OTHERWISE IN CONNECTION WITH A PARTICULAR PROJECT, WILL BE LIMITED TO AMOUNTS PAID BY YOU TO CROWDSTREET PURSUANT TO THIS AGREEMENT IN CONNECTION WITH SUCH PROJECT. UNDER NO CIRCUMSTANCES WILL CROWDSTREET OR ITS REPRESENTATIVES BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR EXEMPLARY DAMAGES ARISING FROM OR RELATED TO THE USE OF THE WEBSITE OR THE SERVICES OR THIS AGREEMENT, EVEN IF CROWDSTREET HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

YOU ACKNOWLEDGE AND AGREE THAT CROWDSTREET HAS OFFERED ITS SERVICES, SET ITS PRICES, AND ENTERED INTO THIS AGREEMENT IN RELIANCE UPON THE WARRANTY DISCLAIMERS AND LIMITATIONS OF LIABILITY SET FORTH IN THIS AGREEMENT, THAT THE WARRANTY DISCLAIMERS AND THE LIMITATIONS OF LIABILITY SET FORTH IN THIS AGREEMENT REFLECT A REASONABLE AND FAIR ALLOCATION OF RESPONSIBILITY BETWEEN YOU AND CROWDSTREET, AND THAT THE WARRANTY DISCLAIMERS AND THE LIMITATIONS OF LIABILITY SET FORTH IN THIS AGREEMENT FORM AN ESSENTIAL BASIS OF THE BARGAIN BETWEEN YOU AND

CROWDSTREET. CROWDSTREET WOULD NOT BE ABLE TO PROVIDE THE SERVICES TO YOU ON AN ECONOMICALLY REASONABLE BASIS WITHOUT THESE LIMITATIONS.

IF YOU ARE A CALIFORNIA RESIDENT, YOU WAIVE CALIFORNIA CIVIL CODE SECTION 1542, WHICH SAYS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Section 13.    <u>MISCELLANEOUS</u>

13.1    <u>Arbitration</u>

Any claim arising out of or related to this Agreement or the access and use of the CrowdStreet Marketplace and Website will be resolved exclusively by arbitration, which, unless the parties agree otherwise in writing, will be administered by and in accordance with the rules of the American Arbitration Association. The place of arbitration will be New Castle County, Delaware. The award rendered by the arbitrator will be final and binding, and judgment may be entered on the award in any court having jurisdiction. The parties may endeavor to resolve disputes by mediation at any time as they may agree, provided, however, that resolution of disputes by mediation is not required prior to initiating resolution of disputes by arbitration. Notwithstanding anything to the contrary in this paragraph, CrowdStreet may seek injunctive relief in any court having jurisdiction, and this agreement to arbitrate certain disputes will not apply in the event parties that are integral to the resolution of a dispute are not also subject to an agreement to arbitrate and a court proceeding is otherwise pending or threatened.

13.2    <u>Entire Agreement</u>

This Agreement (including the documents and instruments referred to in this Agreement) constitutes the entire agreement and understanding of the parties with respect to the subject matter and supersedes all prior understandings and agreements, whether written or oral, among the parties with respect to such subject matter.

13.3    <u>Force Majeure</u>

Neither party will be responsible for failure to perform any obligation under this Agreement due to causes beyond the reasonable control of such party, including but not limited to strikes, lockouts, riots, epidemics, war, government regulation, fire, flood, natural disasters, Acts of God, or inadequacies of equipment, or other cause beyond the reasonable control of such party.

13.4    <u>Governing Law</u>

This Agreement will be governed by and construed and enforced in accordance with the laws of the state of Delaware, without regard to conflicts of laws provisions.

13.5    <u>Severability</u>

If any provision of this Agreement is found unenforceable, that provision will be deemed to be modified to the extent necessary to make it enforceable, while preserving its intent.  If any provision of this Agreement is nonetheless held unenforceable in any jurisdiction, the provision will be severed from this Agreement as to that jurisdiction, and the enforceability of this Agreement in any other jurisdiction and of the remaining provisions in that jurisdiction will not be affected.

**SPONSOR:  BDR CAPITAL PARTNERS, LLC.**

By:

Name:    Todd Bennett

Title:    Manager

Date:    12/13/2019

**CROWDSTREET, INC.**

By:

Name:    Darren Powderly

Title:    Co-Founder

Date:    12/13/2019

## APPENDIX A

### DEFINED TERMS

As used in this Agreement:

1.      "Affiliate" means an entity which directly or indirectly, owns or controls, is owned or is controlled by or is under common ownership or control with, another entity, whereby "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of an entity, whether through the ownership of voting securities, by contract, or otherwise, and "controlling" and "controlled" have meanings correlative thereto, and whereby "owns" means the beneficial ownership of more than fifty percent (50%) of the voting securities or other equivalent voting interests of the entity.

2.      "CrowdStreet Materials" means (a) the Website, including, without limitation, the visual interfaces, graphics, design, systems, methods, information, computer code, software, services, "look and feel," organization, compilation of the content, code, and data, and (b) all content on the Website, including, without limitation, all articles, documents, brochures, presentations, pictures, images, audiovisual works, other informational materials and any user comments; provided, that CrowdStreet Materials do not include User Content or Sponsor Materials (except to the extent of the "look and feel" of such materials as designed by CrowdStreet).

3.      "Securities" means any equity or debt securities or similar instruments you offer or sell through the CrowdStreet Marketplace.

4.      "Services" means any services provided to you by CrowdStreet in connection with this Agreement (including under any particular Proposal), which may include permitting your use of the Website, posting of a Project, formatting Project postings to conform to the standard look and feel of other projects posted on the Website, post-closing investor management and transaction document management.

5.      "Sponsor Materials" means all materials and information you provide that are made available through the CrowdStreet Marketplace.

6.      "User Content" means content posted on the Website by users of the Website other than you or CrowdStreet, which may include, without limitation, personal and representative profiles and information sheets, comments, streaming feeds, articles, documents, brochures, presentations, pictures, images, audiovisual works, other informational materials and any user comments or other unedited or third party content.

7.      "Users" means active or prospective investors who have access to the Website.

8.      "Website" means the website located at the top-level domain name crowdstreet.com and app.crowdstreet.com or custom URL for the CS Connect white-label software.

DocuSign Envelope ID: E7D85BB1-CC29-471C-89B7-239A32A19BC

## APPENDIX B

### SPONSOR REPRESENTATIONS AND WARRANTIES

You are be responsible for your use of and activities on the CrowdStreet Marketplace, including the Website.  As such, you are responsible for all offers and sales of Securities by you or by any issuer organized, owned or controlled by you or your affiliates ("Posting Issuer"), including, without limitation, compliance with applicable federal, state and non-U.S. securities laws, proper maintenance of all books and records applicable to you and your Posting Issuers, including stock, LLC interest, and other ownership records, and all aspects of the organization and operation of Posting Issuers.

You represent and warrant to, and agree with, CrowdStreet as of the date of this Agreement, and as of each Closing Date, as follows:

1. You, as Spo and each Posting Issuer are or will be (a) in the case of each business organization, duly formed and organized, and validly existing under the laws of the state of incorporation or organization, in each case, with all requisite power and authority to conduct its business as conducted and proposed to be conducted, to perform its obligations under this Agreement and other agreements with CrowdStreet, and to issue any Securities being offered and sold, and (b) lawfully qualified to do business (if required by law) and in good standing (if applicable) in each jurisdiction in which you or such Posting Issuer conducts business.

2. This Agreement has been duly authorized, executed and delivered by you and constitutes a legal, valid and binding obligation of yours, except as such obligation may be limited by bankruptcy, insolvency, reorganization and other similar laws affecting the rights of creditors generally and the application of general equitable principles (regardless of whether the issue of enforceability is considered in a proceeding in equity or at law).

3. There is no consent, approval, authorization, order, registration or qualification with any court or governmental agency required for the execution and delivery and performance of this Agreement except for those which have been obtained and are in full force and effect;

4. Neither you nor any Posting Issuer is or will be in breach or violation of, or default under, with or without notice or lapse of time or both, your or its corporate or LLC charter, bylaws or other governing documents.

5. With respect to each Posting Issuer:

    (a) All of the issued and outstanding capital stock or other equity interests in such Posting Issuer has or will have been duly authorized and validly issued, fully paid, and nonassessable.

(b)     Securities being offered and sold by each Posting Issuer will have been duly authorized and, when duly executed, authenticated, issued and delivered against payment therefor, will be validly issued, fully paid and nonassessable.

(c)     There is no consent, approval, authorization, order, registration or qualification with, or notice to, any governmental agency required for the offer, sale, and issuance of Securities except for those which have been obtained or given and are in full force and effect or will be obtained or given and be in full force and effect within legally required time frames.

(d)     The offer and sale of Securities by the Posting Issuer and the consummation of the other transactions contemplated in connection therewith will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under the organizational documents of a Posting Issue, and the issuance of Securities by such Posting Issuer and the consummation of the other transactions contemplated in connection therewith will not conflict with or result in a breach of any contract, agreement, indenture, note, trust deed, mortgage or other agreement or instrument to which Sponsor or Posting Issuer is a party or by which it, or any of its properties is bound, or violate any applicable law, rule, regulation, judgment, order or decree of any government or governmental body, domestic or foreign.

6.     There are no pending actions, suits or proceedings against or affecting you, a Posting Issuer, or any properties of either, that could reasonably be expected to have a material effect on your performance of and activities under this Agreement, and, to the best of your knowledge, no such suits or proceedings are threatened or contemplated.

7.     You or your Posting Issuer will pay all taxes, fees and other governmental charges in connection with the offer and sale of Securities.

8.     Each offer and sale of Securities pursuant to this Agreement will at all times be exempt from the registration and prospectus delivery requirements of the Securities Act and any applicable state securities or "blue sky" laws.    In furtherance of the foregoing, you will notify CrowdStreet in writing, either as part of a Proposal or otherwise, whether or not you or a Posting Issuer intend to rely on an exemption from registration that permits general advertising and general solicitation, and:

(a)     In the event that you or a Posting Issuer elects to offer and sell Securities in reliance on an exemption from registration that prohibits general solicitation and general advertising, you, each Posting Issuer, and all of your respective Representatives, will refrain from all forms of general solicitation and general advertising, including, but not limited to, advertisements, articles, notices or other communications published in

any newspaper, magazine or similar medium or broadcast over television or radio.

(b)    In the event that you or a Posting Issuer elect to offer and sell Securities in reliance on an exemption from registration that permits general solicitation and general advertising, you will be solely responsible for verifying, as and to the extent required by applicable securities laws, that all investors in each Offering qualify as "accredited investors".

9.    All financial information provided by Sponsor or any Posting Issuer, including any audited or unaudited financial statements, is accurate and complete and fairly presents in all material respects, the financial position and results of operations of the subject person as of the dates and for the periods specified in such financial statements.  There has been no material adverse change or development with respect to you or any Posting Issuer, taken as a whole, since the date of the most recent financial information provided.

10.    Neither you nor any Posting Issuer, nor any of your or its respective officers, directors, managers, or holders of 5% or more of capital stock or other equity, is subject to or party to, or has received any notice or advice that any of them may become subject to, any investigation with respect to, any regulatory or other proceeding, consent decree, or other state or federal regulatory enforcement action, proceeding or order, that restricts the conduct of your or its business.

11.    The Sponsor Materials do not and will not contain any untrue statement of a material fact or fail to contain a material fact that is required to be stated therein or necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading.

12.    Neither you nor any Posting Issuer, nor any of your or its respective officers, directors, managers, promoters, holders of 10% or more of the capital stock or other equity, or any person that has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers of securities, are subject to:

(a)    Felony or misdemeanor convictions in connection with the purchase or sale of a security or involving the making of a false filing with the SEC within the last ten years;

(b)    Injunctions or court orders within the last five years against engaging in or continuing conduct or practices in connection with the purchase or sale of securities, or involving the making of any false filing with the SEC;

(c)    U.S. Postal Service false representation orders within the last five years;

(d)    A proceeding or order:

(i)    revoking or suspending registration as a broker, dealer, municipal securities dealer, or investment adviser;

        (ii)     placing limitations on activities as such;

        (iii)    barring association with any entity; or

        (iv)    barring participating in an offering of penny stock; or

(e)    A suspension or expulsion from membership in, or suspension or barring from association with a member of, a registered national securities exchange or national securities association for conduct inconsistent with just and equitable principles of trade.

APPENDIX C

**CROWDSTREET REPRESENTATIONS AND WARRANTIES**

CrowdStreet will be responsible for the operation of the CrowdStreet Marketplace, including the Website, in a manner consistent with its representations to users of the Website generally, as well as users of the CrowdStreet Marketplace, including Sponsors and Users.

CrowdStreet represents and warrants to and agrees as of the date of this Agreement and as of each Closing Date, as follows:

1.      CrowdStreet is and will be duly organized and validly existing under the laws of the state of Delaware, with all requisite power and authority to conduct its business as conducted and proposed to be conducted and perform its obligations under this Agreement, and is lawfully qualified to do business (if required by law) and in good standing (if applicable) in each jurisdiction in which it conducts business.

2.      This Agreement has been duly authorized, executed and delivered by CrowdStreet and constitutes a legal, valid and binding obligation of CrowdStreet, except as such obligation may be limited by bankruptcy, insolvency, reorganization and other similar laws affecting the rights of creditors generally and the application of general equitable principles (regardless of whether the issue of enforceability is considered in a proceeding in equity or at law).

3.      There is no consent, approval, authorization, order, registration or qualification with any governmental agency required for the execution, delivery and performance of this Agreement.

4.      CrowdStreet will perform the additional duties expressly agreed to in each Proposal.

## APPENDIX D

**COVENANTS AND CONDITIONS FOR EACH CLOSING**

1.      The Posting Issuer shall have obtained all governmental authorizations required, if any, in connection with the offer, sale and issuance of Securities and the performance of its obligations hereunder.

2.      Prior to the Closing Date, the Posting Issuer shall have furnished to CrowdStreet such further information, certificates and documents as it may reasonably request.

If any of the covenants and conditions specified in this Appendix D shall not have been fulfilled in all material respects when and as provided, or if any of the information, certificates or documents referred to in or contemplated above shall not be reasonably satisfactory in form and substance to the recipient thereof, CrowdStreet may determine not to list a Project on the Website

# EXHIBIT D



CROWDSTREET
CONNECT

CrowdStreet Marketplace Proposal

**December 12, 2019**

Todd Bennett
President
BDR Capital Partners, LLC
11100 Main Street, Suite 201
Bellevue, WA 98004

Dear Todd,

CrowdStreet, Inc. ("CrowdStreet") is pleased to offer BDR Capital Partners, LLC ("Customer" or "Sponsor") the opportunity to use the CrowdStreet Marketplace for Sonata at Columbia Station ("Offering" or "Project") under the following terms and conditions and pursuant to the CrowdStreet Marketplace Services Agreement, dated as of <u>12/13/2019</u>, by and between CrowdStreet and Customer (the "Marketplace Services Agreement"). Customer acknowledges and agrees to the Project terms as outlined in Exhibit A. Customer also acknowledges and agrees to the CrowdStreet Investments Program Addendum attached as Exhibit B.

1. **Project**                 Sonata at Columbia Station, a 91 unit multifamily complex with 2,995 square feet of retail, in Seattle Washington

2. **Sponsor**                 BDR Sonata I, LLC

3. **Minimum Investment**      The minimum investment amount for each investor shall be $25,000.

4. **License Fees**            A $15,000 nonrefundable **on-boarding fee** will be paid upon the date this proposal is signed by Customer (the "Effective Date") and applied toward the final solution deployment fee.

                               Upon the conclusion of the Customer's use of the Publishing Platform and Transaction Center, a one-time **solution deployment fee** based on the number of Investor Rooms (as defined in the Marketplace Services Agreement) created will be calculated according to the following table and due upon receipt of invoice.



| # of Investor Rooms/Positions | | |
| Min | Max | Price Per Investor Room |
| --- | --- | --- |
| 1 | 10 | $2,200 |
| 11 | 25 | $1,600 |
| 26 | N | $1,200 |

**For Illustration Purposes**: If 20 Investor Rooms are created then the solution deployment fee shall be calculated as follows:

Investor Rooms 1-10: 10 x $2,200 = $22,000
Investor Rooms 11-20: 10 x $1,600 = $16,000
Deployment Fee: $22,000 + $16,000 – $15,000 onboarding fee = $23,000

Customer shall also be subject to an **annual solution fee** based on the total number of active Investor Rooms for the Project at a rate of $200 per Investor Room. Annual solution fees will be charged and due on each anniversary of the Effective Date during the Management Phase (defined below). For the avoidance of doubt, annual solution fees will not be subject to proration or rebate.

**5. Term**

Project will be posted and available as a "current offering" on the CrowdStreet Marketplace for thirty days from the first day it is publicly posted on the Publishing Platform, or at such time that the CrowdStreet Maximum Allocation is met, whichever occurs sooner ("Fundraising Phase").

Following the Fundraising Phase, the Project will be available to the Customer via the Management Console and investors via their Investor Rooms for the entire duration of the Project (i.e., until the final disposition of the underlying property) ("Management Phase") and beyond.

**6. General Solicitation**

[Sponsor intends to conduct the Offering using general solicitation and general advertising per Rule 506(c) of Regulation D for the Project, and in connection therewith, acknowledges its responsibilities under applicable federal and state laws and terms of the Marketplace Services Agreement.



**7.  Agreement**

The parties' legal obligations are further set forth in the Marketplace Services Agreement, the terms of which are incorporated herein by reference.  Sponsor acknowledges its obligations relating to Sponsor investor management and investor communications pursuant to the Marketplace Services Agreement, including relating to delivery of quarterly reports.  All such communications shall be made through the Management Console.  PLEASE REVIEW THE QUARTERLY REPORTING AND K-1 DELIVERY OBLIGATIONS GENERALLY REQUIRED AND AVAILABLE IN YOUR HELP CENTER IN THE MANAGEMENT CONSOLE.

**Acknowledged & Agreed:**

| **SPONSOR: BDR CAPITAL PARTNERS, LLC.** | **CROWDSTREET, INC.** |
|---|---|
| By:  *[signature]* <br> D29858ABBCC942B... <br> Todd Bennett | By:  *Darren Powderly* <br> 87D69C841605455... |
| Name:  Manager | Name:  Darren Powderly |
| Title: | Title:  Co-Founder |
| Date:  12/13/2019 | Date:  12/13/2019 |



**Sponsor: BDR Capital Partners, LLC.**
**Projec**t: Sonata at Columbia Station



**EXHIBIT A**

**Single Asset**

| Exhibit A | | |
|---|---|---|
| | | |
| **Capital Stack** | | |
| CrowdStreet Estimated Raise* | $5,000,000 | |
| Minimum Investment Amount | $25,000 | |
| Days on Marketplace | 30 | |
| Funds Due Date | 1/30/2019 | estimated |
| Targeted Property Close Date | 1/30/2019 | estimated |
| Sponsor Co-Investment | $1,000,000 | |
| LP Equity (Inclusive of CS Goal) | $12,500,000 | |
| 3rd Party Capital or Mezz | | |
| Senior Loan | $21,325,800 | |
| Total | $33,825,800 | |
| | | |
| **Sponsor Fees** | | |
| Acquisition Fee | | |
| Asset Management Fee | 1% of EGI | |
| Disposition Fee | 1% of Sale Price | |
| Development/Construction Management Fee | | |
| | | |
| **Operational Fees** | | |
| Financing Fee | | |
| Property Management Fee | 3% of EGI | |
| Equity Placement Fee | $300,000 | |
| | | |
| **General Assumptions** | | |
| Stabilized Occupancy | 95.0% | |
| Exit Cap Rate | 4.75% | |
| Annual Rent Growth | 3.50% | |
| Annual Expense Growth | 2.00% | |




| Investment Structure | Investor | Sponsor |
|---|---|---|
| Preferred Return [ Cumulative/Non-Compounding] | 8.00% | |
| Preferred Return Start | TBD | |
| Split After Preferred Return & RoC | 80% | 20% |
| | | |
| Key Deal Points & Return Summary | | |
| Targeted Project Level IRR | 14.3% | |
| Targeted Investor Level IRR | 13.1% | |
| Targeted Hold Period | 7 Year | |
| Distribution Commencement | 6/30/2021 | HUD loan requirement |
| Distribution Frequency | quarterly | |

*CrowdStreet estimates that it will be able to raise approximately $5,000,000 for the offering. However, should the raise exceed expectations, Sponsor will enable CrowdStreet to continue to leave the offering open for investment until $11,500,000 has been raised, or the maximum allocation has been met. Please note that CrowdStreet is a best efforts platform and estimated raise allocation is not guaranteed.

**EXHIBIT B**
**CrowdStreet Investments Program Addendum**

CrowdStreet, Inc.
Confidential



CrowdStreet, Inc. ("CrowdStreet") is pleased to offer BDR Companies ("Customer" or "Sponsor") the opportunity to use the CrowdStreet Investments Program ("CSIP") for Sonata at Columbia Station ("Offering" or "Project") under the following terms and conditions and pursuant to the CrowdStreet Marketplace Proposal, dated ___12/13/2019___, by and between CrowdStreet and Customer ("Proposal") for the Offering.

| | | |
|---|---|---|
| 1. | CSIP Investors | Investments made by CSIP include separate investments from one or more CrowdStreet affiliates, including CrowdStreet Blended Portfolio I, LLC, and CrowdStreet Private Managed Accounts (collectively, "CSIP Investors"). |
| 2. | Indication of Interest Amount | The indication of interest amount from CSIP Investors for the Offering is $450,000 ("Indication of Interest Amount"). This amount is valid until the later of _____, or 10 business days after this proposal is delivered to you (the "Expiration Date"). If this addendum and its corresponding Marketplace Proposal are not executed by all parties on or before the Expiration Date, the Indication of Interest Amount is subject to revision and can change as a result of timing and other factors. Indications of interest are made assuming that: i) the Project has been approved for listing on the CrowdStreet Marketplace by the CrowdStreet investments team; and ii) any additional information or due diligence requests made on behalf of CSIP Investors have been received and are deemed satisfactory (as determined by CrowdStreet). |
| 3. | Allocation | Customer will make reasonable efforts to provide an investment allocation for CSIP Investors that is equal to the Indication of Interest Amount above, which is included as part of (and not in addition to) the CrowdStreet Maximum Allocation amount set forth on Exhibit A. |
| 4. | Final Investment Amount | The final investment amount will be determined by CrowdStreet and its affiliates 2-3 business days before the "Offers Due" date of the investment opportunity, which is listed on the CrowdStreet Marketplace listing for the Project. CrowdStreet and its affiliates will make reasonable efforts to ensure that Indication of Interest Amounts are accurate, but nonetheless reserves the right to change the investment amounts for CSIP Investors prior to closing. |



5.      CSIP Investor         Customer agrees to reimburse each participating CSIP
        Expense               Investor (other than Private Managed Accounts) for its share of
        Reimbursement         costs incurred in connection with the use of the CrowdStreet
                              Marketplace.   For the Indication of Interest Amount shown
                              above, the estimated reimbursement for expenses will be
                              $13,221.29 (the "Expense Reimbursement Amount").   If the
                              final investment amount of CSIP Investors differs from the
                              initial   Indication   of   Interest   Amount,   the   Expense
                              Reimbursement Amount will be adjusted as appropriate.
                              Expense Reimbursement Amounts will be due at the same
                              time as the solution deployment fee, which will be invoiced
                              after closing in accordance with the Proposal.   Each CSIP
                              Investor will have its own Investor Room with respect to the
                              Offering.   Investor Rooms for CSIP Investors (other than
                              Private Managed Accounts) will not count for purposes of
                              determining the solution deployment fee or annual solution
                              fees (i.e., the expense reimbursement will be in lieu of such
                              fees).

6.      Minimum LP            Offers from CSIP Investors are contingent on the Offering
        Equity                receiving binding commitments for LP Equity equal to at least
                              90% of the amount shown next to "LP Equity" on Exhibit A of
                              the CrowdStreet Marketplace Proposal, not including any
                              investments by CSIP Investors ("Minimum LP Equity").

7.      Offers                If Customer accepts any investment offers from CrowdStreet
                              Marketplace investors, all CSIP Investor offers must also be
                              accepted.

8.      All Investor          CSIP Investors shall maintain any and all rights and privileges
        Rights                afforded to other investors participating in the investment
        Maintained            offering without exception.

9.      Project               Each CSIP Investor shall be permitted to share and/or
        Information           comment on (including in summary form) any information it
                              receives as an investor in the Project (i.e., distribution

DocuSign Envelope ID: E7D85EB1-CC29-471C-89B7-239A832A19DC



information and quarterly reports) to the members of the applicable CSIP Investor.

10.    Agreement        The parties' legal obligations are further set forth in the Marketplace Services Agreement and the Proposal, the terms of which are incorporated herein by reference.  In the event of a conflict between the Proposal and this Exhibit B, with respect to CSIP Investors only, this Exhibit B shall govern.  None of the terms of this Exhibit B shall apply to Marketplace investors.

**Acknowledged & Agreed:**

| BDR COMPANIES | CROWDSTREET, INC. |
|---|---|
| By: _Todd Bennett_ | By: _Darren Powderly_ |
| D29858ABBCC942B... | 87D69C841605455... |
| Name: Todd Bennett | Name: Darren Powderly |
| Title: Manager | Title: Co-Founder |
| Effective Date: 12/13/2019 | Effective Date: 12/13/2019 |

# EXHIBIT E



October 25, 2022

BDR Capital Partners, LLC
℅ Todd Bennett, President
11100 Main Street, Suite 201
Bellevue, WA 98004

Mr. Bennett,

Please review this correspondence regarding the fees owed to CrowdStreet, Inc. ("CrowdStreet") by BDR Capital Partners, LLC ("BDR") at your earliest convenience.

Through its refusal to pay the fees owed to CrowdStreet regarding both the Investment Renewal Software and the Offering identified as Sonata at Columbia Station (the "Offering"), BDR is in breach of the Sponsor Direct Proposal (the "Sponsor Direct Proposal"), the CrowdStreet Marketplace Services Ageement (the "MSA"), and the CrowdStreet Marketplace Proposal (the "Proposal"). Please consider this correspondence demand for payment from BDR of all outstanding amounts owed to CrowdStreet in the amount of $196,352.06 – $43,352.06 of which is owed pursuant to the Sponsor Direct Proposal and $153,000.00 of which is owed pursuant to the MSA and the Proposal.

BDR has raised $3.12 million using CrowdStreet's services.  However, CrowdStreet has not received any payment – not even partial payment – from BDR since March 2020. In October 2021, CrowdStreet sent BDR a proposed payment plan, but BDR did not respond.  CrowdStreet has contacted BDR repeatedly, including BDR's accounting department and CFO's office, via telephone and email without receiving a reply.  There is no dispute regarding the amounts owed (as has been conceded by BDR's payment plan proposal earlier this month), and CrowdStreet has performed its obligations fully under the Sponsor Direct Proposal, the MSA, and the Proposal.

On October 27, 2017, BDR and CrowdStreet entered into the Sponsor Direct Proposal.  A courtesy copy of the Sponsor Direct Proposal is attached to this letter as Exhibit A for ease of reference.   By executing the Sponsor Direct Proposal, BDR agreed to pay CrowdStreet the following amounts:

> Section 2: A one-time implementation fee of $5,000 shall be charged to set up all offerings (both 40+/- current and 40+/- archived), contacts, documents and distributions.

> An annual subscription fee of $18,638 (350 Investor Rooms * $53.25 per Investor Room) will apply for each year of the Initial Term. Payment terms for the first year of the Initial Term will be

© 2022 CrowdStreet, Inc. All Rights Reserved

50% ($9,319) due upon Effective Date and the remaining 50% ($9,319) balance due upon [BDR] launching [BDR]'s private-label portal on [its] website or 45 days after the Effective Date, whichever is earlier. Payment of the annual subscription fee for year two of the Initial Term shall be on or before October 31, 2018.

Annual subscription fees for Renewal Terms shall be calculated based on the total number of active Investor Rooms at the end of the contract year. Fees will be invoiced and due upon each anniversary date of this [Sponsor Direct Proposal] for the Term.

Section 3: An initial subscription term ("Initial Term") of twenty-four (24) months from Effective Date. Automatic twelve-month subscription renewals ("Renewal Terms") unless either Party provides thirty (30) days written notice of termination prior to the commencement of the renewal term.

On December 13, 2019, BDR and CrowdStreet entered into the MSA. A courtesy copy of the MSA is attached to this letter as Exhibit B for ease of reference. By executing the MSA, BDR agreed to the following relevant terms and conditions:

Section 1.2: Your use of the CrowdStreet Marketplace and the Servies is subject to your acceptance of this Agreement . . .

Section 3.1: You agree to pay CrowdStreet for use of the CrowdStreet Marketplace and the Services purchased on or through your account as set forth herein and in each Proposal . . .

Section 3.2: Fees will be billed and must be paid as set forth herein or in each Proposal.

Further, on December 13, 2019, BDR and CrowdStreet entered into the Proposal related to the Offering. A courtesy copy of the Proposal is attached to this letter as Exhibit C for ease of reference. By executing the Proposal, BDR agreed to pay the following amounts to CrowdStreet:

Section 4: A $15,000 nonrefundable on-boarding fee will be paid upon the date this proposal is signed by [BDR] (the "Effective Date") and applied toward the final solution deployment fee.
Upon the conclusion of the [BDR]'s use of the Publishing Platform and Transaction Center, a one-time solution deployment fee based on the number of Investor Rooms (as defined in the [MSA]) created will be calculated according to the following table and due upon receipt of invoice.



| # of Investor Rooms/Positions | | |
|---|---|---|
| Min | Max | Price Per Investor Room |
| 1 | 10 | $2,200 |
| 11 | 25 | $1,600 |
| 26 | N | $1,200 |

For Illustration Purposes: If 20 Investor Rooms are created then the solution deployment fee shall be calculated as follows:
Investor Rooms 1-10: 10 x $2,200 = $22,000
Investor Rooms 11-20: 10 x $1,600 = $16,000
Deployment Fee: $22,000 + $16,000 - $15,000 onboarding fee = $23,000

[BDR] shall also be subject to an annual solution fee based on the total number of active Investor Rooms for the Project at a rate of $200 per Investor Room. Annual solution fees will be charged and due on each anniversary of the Effective Date during the Management Phase (defined below). For the avoidance of doubt, annual solution fees will not be subject to proration or rebate.

The terms of each agreement – the Sponsor Direct Proposal, the MSA, and the Proposal – are clear. CrowdStreet has made every effort to work with BDR toward a resolution to no avail. Please remit payment in full of the outstanding amounts owed to CrowdStreet by 5:00 PM in Austin, Texas on or before November 4, 2022. In the event that payment is not received in full, CrowdStreet is prepared to take legal action to recover all amounts owed as well as its costs associated with pursuing its rights under the agreements with BDR.

If you have any clarifying questions, please contact me at legal@crowdstreet.com.

Sincerely,

/s/ Tyler Levy, Associate General Counsel